# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAUDIO HERNANDEZ, | : | CIVIL NO. 1:CV-05-1655 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JOHN A. PALAKOVICH, et al., | : | |
| Defendants | : | |

## MEMORANDUM

This civil rights action pursuant to 42 U.S.C. § 1983 was filed by Claudio Hernandez, an inmate confined at all relevant times at the State Correctional Institution at Smithfield (SCI-Smithfield), Pennsylvania. At the time the action was initiated, Hernandez proceeded pro se. He is now represented in this matter.[1] Named as Defendants are the SCI-Smithfield Medical Department and the following individuals who were employed at SCI-Smithfield at the relevant time: John A. Palakovich, Superintendent; Victoria Kormanic, Deputy Superintendent; and George Weaver, Health Care Administrator. Ronald Long, M.D., a physician at SCI-Smithfield, is also named as a Defendant. Other Defendants named are Holy Spirit Hospital and "John Doe," a surgeon at Holy Spirit Hospital. Presently pending are three separate motions to dismiss filed on behalf of Holy Spirit Hospital (Doc. No. 19), the Corrections Defendants (Doc. No. 21), and Dr. Long (Doc. No. 22). For the reasons that follow, the motions to dismiss will be granted, but Plaintiff will be afforded the opportunity to submit an amended complaint in this action with respect to Defendants Long and the Corrections Defendants.

---

[1] Counsel was appointed by the Third Circuit Court of Appeals pursuant to an appeal filed by Hernandez earlier in this case. Following resolution of the appeal, appointed counsel filed a Petition for Special Admission to continue representing Hernandez in this matter. (Doc. No. 70.)

## I. Allegations in Complaint

The complaint submitted by Plaintiff in this action is confusing to follow in many respects.[2] However, in construing the document liberally, he appears to set forth the following claims. Plaintiff alleges that he was injured as a result of a routine surgery performed on March 23, 2004, at Holy Spirit Hospital in Harrisburg, Pennsylvania, for "catera" to remove a liquid fluid out of his left eye.[3] He was referred for the surgery by Defendant Long. (Doc. 1, Compl. at 4.) Following the operation Plaintiff had approximately six (6) follow-up visits with the ophthalmologist specialist at Holy Spirit Hospital, and was prescribed several different eye drops. During his last visit he was informed by the specialist that his left eye would become smaller than his other eye, and that the eye was losing its color. This unidentified specialist also informed Plaintiff that his eye was no longer useful, and would have to be removed in the near future. Following his last visit with this doctor, Plaintiff states he was referred to another specialist who prescribed a set of glasses to protect his good (right) eye. (Id.)

On September 20, 2004, Plaintiff's eye became infected, and he was taken to Blair County Hospital where he was treated by Dr. Batissan. Penicillin was prescribed to treat the infection, and Plaintiff was told that his left eye would have to be removed, and replaced with an artificial eye. Plaintiff claims that "all this started from just a liquid fluid which needed to be drained from [his] eye which [he] was told was routine surgery." (Id.)

---

[2] For example, it is disjointed and lacks punctuation. In addition, at several points Plaintiff refers to his "right" eye when he clearly intends to refer to his "left" eye.

[3] Although Plaintiff states it was his "right" eye at one point in the beginning of the complaint, it is clear in reading the document as a whole that this is an error, and he intended to say "left" eye.

On October 29, 2004, Plaintiff states he was prescribed another eye drop to use until surgery was scheduled. On December 16, 2004, he was taken to see Dr. John Shietrome who was going to remove the "Lent and Pupil" of his left eye. The date of January 7, 2005, was scheduled to perform this operation. However, Plaintiff alleges that the operation never took place because he refused to sign a "waiver of causation form." He refused to do so without first having counsel review the waiver. According to Plaintiff, the waiver would have relieved the Department of Corrections of liability with respect to his eye. Due to his refusal to sign the waiver, Plaintiff maintains that SCI-Smithfield refused to provide medical coverage for the surgery. As a result, he claims that the surgery was not performed and he lost complete sight in his left eye.

Based on the foregoing allegations, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, he argues that Defendants knew of the obvious danger to him if his eye remained untreated, yet they failed to treat him in an adequate and timely manner. He challenges the prescription of eye drops that failed and, according to Plaintiff, caused the infection and the ultimate loss of his eyesight. He also challenges the failure to recommend the needed surgery earlier and, instead, provide a "band aid" form of treatment in the form of eye drops and darkened glasses. (Id. at 9.) He challenges "the doctor's" intentional and deliberate neglect in failing to remove the infected lent and pupil which caused the loss of his sight, as well as diminished the sight in his good eye. (Id.) He further argues that Defendants were deliberately indifferent when they denied him the surgery to remove the lent and pupil that would have saved his sight if performed timely. In addition to the above claims, Plaintiff also sets forth state claims of negligence, medical

malpractice and intentional infliction of emotional distress. As relief he seeks compensatory and punitive damages, costs and attorneys fees.

## II. Procedural History

The complaint in this action was filed in August of 2005. Along with the complaint, a motion seeking the appointment of counsel was submitted. On September 29, 2005, an order granting Plaintiff's motion to proceed in forma pauperis was granted, and service of the petition was directed on the named Defendants. In December of 2005, motions to dismiss the complaint were filed by three separate groups of Defendants: (1) Holy Spirit Hospital; (2) the Corrections Defendants; and (3) Dr. Long. Thereafter, orders were issued by the Court denying Plaintiff's request for counsel, and granting a request for enlargement of time within which to oppose Defendants' motions to dismiss. (Doc. Nos. 30, 31.) On January 31, 2006, the Court received a letter from inmate Phillip Quinn requesting counsel on behalf of Plaintiff.[4]

When Plaintiff failed to respond to the Defendants' motions to dismiss, the Court issued an order on February 28, 2006, dismissing the complaint pursuant to Fed. R. Civ. P. 41(b) for failure to comply with a court order. (Doc. No. 36.) Following Plaintiff's appeal, the United States Court of Appeals for the Third Circuit appointed counsel on Plaintiff's behalf. The Court of Appeals found that before dismissing a case as a sanction for failure to follow a court order, courts are required to consider the factors set forth in Poulis v. State Farm Fire and Casualty Co.,

---

[4] Quinn, a prisoner at SCI-Smithfield at the time, identified himself as the individual who had assisted Plaintiff with the preparation of his complaint. He explained to the Court that Plaintiff was unable to speak or understand English well, and was unable to respond to motions due to blindness in one eye and diminished eyesight in the other. Quinn also noted that he was unable to continue litigating the case on Plaintiff's behalf due to disciplinary reprimands. He explained to the Court that without assistance Plaintiff would be unable to meet the deadlines imposed by the Court for opposing Defendants' motions to dismiss.

747 F.2d 863 (3d Cir. 1984). (Doc. No. 68.) As such, this Court's order of February 28, 2006 was vacated, and the matter remanded for further proceedings. Following the issuance of the Third Circuit's mandate Plaintiff submitted briefs in opposition to Defendants' previously filed motions to dismiss. Reply briefs were thereafter filed. The motions are now before the Court for consideration.

### III. Motion to Dismiss Standard

Fed. R. Civ. P. 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). The court is not limited to evaluating the complaint alone. It may also consider documents attached to the complaint and matters of public record. McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009)(citing Lum v. Bank of America, 361 F.3d 217, 221 n.3 (3d Cir. 2004)).

While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), to survive a motion to dismiss a complaint has to plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)(quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough,

Twombly, 550 U.S. at 555, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S. Ct. at 1965 (quoted case omitted).

In resolving a motion to dismiss, the court conducts "a two-part analysis." Fowler, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregards the legal conclusion. Id. at 210-11. Second, the court "determine[s] whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief.'" Id. at 211 (quoted case omitted).

However, '[a] document filed *pro se* is to be liberally construed," Erickson v. Pardus, 551 U.S. 89, 94 (2007)(quoted case and internal quotation marks omitted), and " a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id., 127 S. Ct. at 2200 (quoted case and internal quotation marks omitted). Pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). But a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. Grayson v. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002).

**IV. Discussion**

Plaintiff has brought his claims under 42 U.S.C. § 1983. In order to prevail, he must establish two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

6

It is well-established that civil rights claims cannot be premised on a theory of <u>respondeat superior</u>. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Thus, individual liability can only be imposed if the state actor played an "affirmative part" in the alleged misconduct. Personal involvement may be shown by either allegations of personal direction of or actual knowledge and acquiescence in the deprivation. <u>Id.</u> Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. <u>Rode</u>, 845 F.2d at 1208. The constitutional deprivation alleged in this case is inadequate medical care in violation of the Eighth Amendment.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." <u>Rouse v. Plantier</u>, 182 F.3d 192,197 (3d Cir.1999)(citing <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)). In order to establish a violation based on the Eighth Amendment, "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." See <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004); <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Monmouth County Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987). The "deliberate indifference" standard is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 410 (1997). The defendant must be

7

both aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 841. Only egregious acts or omissions can violate this standard. See White v. Napoleon, 897 F.2d 103, 108-10 9 (3d Cir. 1990).

A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . ." Estelle, 429 U.S. at 106. "Allegations of medical malpractice are not sufficient to establish a Constitutional violation." Spruill, 372 F.3d at 235. An inmate's disagreement with medical treatment also does not rise to the level of "deliberate indifference." See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).

If a prisoner is under the care of medical experts, non-medical prison officials are justified in believing the prisoner is being treated properly and is in capable hands. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). "Absent a reason to believe (or actual knowledge) that ... doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id. at 236; Durmer, 991 F.2d at 67. Non-medical personnel cannot be held to be deliberately indifferent merely because they fail to respond to complaints of an inmate already being treated by prison medical staff. Gusman v. Bureau of Prisons, 231 Fed. App'x 179, 181 (3d Cir. 2007). In the absence of some indication that treatment is not occurring or was

8

inappropriate, the non-medical prison official cannot be found deliberately indifferent. Spruill, 372 F.3d at 236.

### A. Dr. Long's Motion to Dismiss

Defendant Long moves to dismiss the complaint in this action for failure to state a claim on the basis that Plaintiff has failed to plead any facts that would demonstrate that Long was personally involved in, or participated in, the alleged constitutional deprivations. Long maintains that nothing in the record suggests that he was involved in the acts complained of, or that they were done with his knowledge and acquiescence. Long argues that the complaint lacks facts that would show he personally participated in any decision to deny Plaintiff's subsequent surgery, or that he failed in any respect to treat his eye condition in a timely, adequate manner. On this basis, Long seeks the dismissal of the complaint. Even if the complaint contained facts demonstrating personal involvement, Long contends that it is subject to dismissal on the basis that no facts are plead to support a claim of deliberate indifference to a serious medical need.

The only specific reference to Defendant Long is contained in the "Statement of Claims" portion of Plaintiff's complaint. Plaintiff contends that Long is the one who referred him to Holy Spirit Hospital for the cataract surgery performed on March 23, 2004. The claims set forth with respect to the surgery appear to be directed at Defendants Holy Spirit Hospital, John Doe surgeon at Holy Spirit Hospital, and an unidentified ophthalmologist specialist at Holy Spirit Hospital who provided Plaintiff's follow-up care. At some point following the surgery, Plaintiff developed an infection in his eye and was taken from the prison to Blair County Hospital where he was treated by Dr. Batissan, who is not named as a defendant in this action. The complaint does not set forth any allegations against Dr. Long with respect to the development or treatment

9

of this infection. It is not until Plaintiff's allegations with respect to the later surgery for removal of the "Lent and Pupil" where it is unclear as to whether Plaintiff attempts to set forth civil rights claims against Dr. Long. Plaintiff alleges that this second surgery was scheduled for January 7, 2005, but never took place due to "the SCI-Smithfield Institution refusal to provide coverage of medical care due that I would not sign a waiver of causation form due to the involvement of the Institution for the lost (sic) of my eye." (Doc. 1 at 4.) While Plaintiff does not specifically reference any involvement in this decision on Long's part in the Statement of Claim section of his complaint, he does list Long as a defendant in the "Cause of Action" portion of the complaint pertaining to this allegation.[5]

In accepting all facts alleged in the complaint as true, and construing them in the light most favorable to Plaintiff, the Court finds that the standing complaint fails to allege any personal involvement on the part of Dr. Long in the violation of Plaintiff's constitutional rights. However, it is possible that Plaintiff may be able to set forth a claim against Long under the Eighth Amendment if afforded the opportunity to file an amended complaint in this action. For these reasons, the Defendant's motion will be granted, but Plaintiff afforded twenty (20) days to file an amended complaint to set forth facts demonstrating Dr. Long's involvement, if any, in the delay of the second surgery.

    **B.**    **Corrections Defendants' Motion to Dismiss**

---

[5] For example, Long is listed as a defendant with respect to Count 1 - Deliberate Indifference - due to his knowledge of the obvious danger to Plaintiff if his medical condition remained untreated and failure to treat him in a timely manner. (Doc. 1 at 5.) Long is also referenced in Count 2 - Deliberate Indifference - due to the knowledge of obvious medical needs and risk and danger to Plaintiff if he did not receive the needed surgery on his infected eye. (Id. at 6.)

Also pending is a motion to dismiss the complaint filed by the Corrections Defendants. The Corrections Defendants consist of former SCI-Smithfield officials Superintendent John Palakovich, Deputy Superintendent Victoria Kormanic and Health Care Administrator George Weaver. Defendants first maintain that any claims set forth against the SCI-Smithfield Medical Department, as well as all claims set forth against them for monetary damages in their official capacities, are subject to dismissal as barred by the Eleventh Amendment. Without unnecessary elaboration, these claims will be dismissed.

It is well-established that "[a] plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power." Chittister v. Dep't of Community & Economic Dev., 226 F.3d 223, 226 (3d Cir. 2000). Section 1983 does not abrogate Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332, 345 (1979). This immunity extends to all departments or agencies "having no existence apart from the state." Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981), citing Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 280 (1977). Pennsylvania does not waive its sovereign immunity for claims based on the denial of civil rights. Additionally, a prison or correctional facility is not a "person" within the meaning of § 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989); Phippen v. Nish, 223 Fed. Appx. 191, 192 (3d Cir. 2007). As such, the SCI-Smithfield Medical Department may not be sued under § 1983 and will be dismissed from this action.

Further, all claims for damages against each of the Corrections Defendants in their official capacity are also barred by the Eleventh Amendment. The Eleventh Amendment

prohibits a lawsuit against state officials sued in their official capacities because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury. Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990). Accordingly, Plaintiff's claims for damages against the Corrections Defendants in their official capacities will be dismissed.

Defendants further contend that the claims must be dismissed against them because Plaintiff has failed to plead personal involvement. As set forth above, in order to state a § 1983 claim, a plaintiff must establish that each and every defendant was personally involved in depriving him of his rights. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). In reviewing the allegations of the complaint, it appears that Plaintiff may only be naming the Corrections Defendants due to their supervisory positions at SCI-Smithfield at the relevant time. He does not specifically relate any of the Corrections Defendants, by name, to any of the alleged constitutional deprivations. However, he does allege that his constitutional rights were violated by SCI-Smithfield's knowledge of his condition and the danger to him if his condition remained untreated. He specifically references the refusal of the SCI-Smithfield Institution to provide coverage of medical care for his second surgery due to his failure to sign the waiver. He alleges that the failure to provide the surgery resulted in the loss of his sight in his left eye, clearly rising to the level of a serious medical need. It is possible that Plaintiff may be able to amend his complaint to set forth allegations demonstrating the deliberate indifference of the Corrections Defendants to his serious medical needs and their involvement, if any, in the decision to deny surgery. For these reasons, Plaintiff will be permitted the opportunity to file an amended complaint for the specific purpose of alleging personal involvement on the part of the Corrections Defendants with respect to these claims.

### C. Holy Spirit Hospital's Motion to Dismiss

A motion to dismiss has also been filed on behalf of Holy Spirit Hospital.[6] (Doc. No. 19.) In the motion, Defendant first seeks dismissal of the complaint on the basis that Holy Spirit Hospital did not act under color of state law. As previously set forth, to prevail on a § 1983 claim, one of the elements Plaintiff must establish is that the conduct complained of was committed by a person acting under color of state law. See Kost, 1 F.3d at 184. In reviewing the complaint, the Court finds that it lacks any facts to indicate that Holy Spirit Hospital or John Doe surgeon acted under state law with respect to their treatment of Plaintiff. Holy Spirit Hospital is a private hospital, and John Doe a private surgeon. Aside from treating Plaintiff, they do not appear to have any connection to the prison or the state.

In West v. Atkins, the Supreme Court ruled that a private physician, who contracted to perform services on a part-time basis to a state prison within the prison confines acted under of color of state law for purposes of a § 1983 claim. West, 487 U.S. 42, 57 (1988). In particular, the Court found that the state was obligated to provide medical care to its prisoners, and it had delegated that function to a private physician, who had voluntarily assumed the contract. Id. at 56. In the instant case, however, there are no allegations in the complaint to even suggest that prison officials had outsourced their obligation to provide medical care for their prisoners to Holy Spirit Hospital or John Doe, or that any of the medical care was provided on the prison grounds. Rather the complaint, construed in the most liberal sense, merely indicates that when

---

[6] Although John Doe, a surgeon at Holy Spirit Hospital, is also listed as a Defendant in this action, he has never been identified and served with the complaint. Regardless, the Court can analyze the claims set forth against him pursuant to 28 U.S.C. § 1915(e)(2)(B).

Plaintiff developed an eye infection and needed medical attention, prison officials transported him to Holy Spirit Hospital for treatment of his immediate medical need. See Marchard v. William W. Backus Hospital, et al., 561 F. Supp. 2d 258, 260 (D. Conn. 2008)(finding that private hospital was not a state actor for purposes of § 1983 action when acting in capacity as private provider of medical care); Fullman v. Pa. Dep't of Corrections, et al., Civ. Action No. 4:07-0079, 2007 WL 257617 (M.D. Pa. Jan. 25, 2007). There is nothing in the complaint to suggest that any type of relationship existed between the State of Pennsylvania, the healthcare provider and Plaintiff. As such, the claims set forth against Holy Spirit Hospital and John Doe surgeon are subject to dismissal on this basis alone.

Plaintiff may argue that at this point in the litigation he should at least be afforded the opportunity to allege facts in an amended complaint in an attempt to establish that Holy Spirit Hospital and John Doe surgeon acted under color of state law. However, with the Eighth Amendment principles set forth above in mind, the Court finds that even if the Defendants were found to be state actors, Plaintiff has failed to set forth a claim of deliberate indifference against them. As such, any amendment would be futile.

In reading the complaint in the most liberal sense, Plaintiff merely alleges that he was referred to Holy Spirit Hospital by Defendant Long for routine cataract surgery on his left eye. John Doe surgeon at Holy Spirit Hospital performed the surgery on March 23. 2004. Thereafter, he was seen on six (6) occasions for follow-up care by an ophthalmologist at Holy Spirit Hospital who provided him with prescriptive eye drops. This individual is not named as a defendant in this action. According to Plaintiff, this doctor also informed him that his eye was losing color, was no longer useful and would have to be removed in the near future. He was

14

thereafter referred to another non-defendant specialist who prescribed a pair of glasses to assist Plaintiff with his good eye.

It was not until September 20, 2004, over seven (7) months after the cataract surgery at Holy Spirit Hospital, that Plaintiff claims he developed an infection in his left eye. He was taken to Blair County Hospital and treated by a doctor there who informed him he would need surgery to remove the infected eye. On October 29, 2004, he was prescribed another eye drop. On December 16, 2004, he was taken to see another doctor who was going to perform surgery to remove the "Lent and Pupil." Although surgery was scheduled for January 7, 2005, the operation never took place because of the refusal of the SCI-Smithfield Institution to provide coverage of medical care due to Plaintiff's failure to sign a waiver of causation form. This form would apparently absolve the institution of any liability with respect to the loss of Plaintiff's eye. None of these claims are alleged against Holy Spirit Hospital or the John Doe surgeon at Holy Spirit Hospital. There are no facts contained in the complaint to support any inference that the care provided at Holy Spirit Hospital was administered with the intent to unnecessarily and wantonly inflict pain upon Plaintiff. At best, Plaintiff's claims sound only in negligence, and as such do not give rise to a violation under the Eighth Amendment. For these reasons, the Eighth Amendment claims against Holy Spirit Hospital and John Doe surgeon will be dismissed.

In his complaint Plaintiff also alleges several state law claims against the moving Defendants. Pursuant to 28 U.S.C. § 1367, the district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims against Defendants over which it has original jurisdiction. In the pending action, the Court has found that the federal claims alleged against the moving Defendant Holy Spirit Hospital, as well as

John Doe surgeon, are subject to dismissal.

The decision whether to decline to exercise supplemental jurisdiction over Plaintiff's supplemental state claims is left to the sound discretion of the court, which focuses on whether the dismissal of the pendent claims best serves the principles of judicial economy, convenience, fairness and comity. Annulli v. Panikkar, 200 F.3d 189 (3d Cir. 1999); Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). While comity favors allowing the state court to hear Plaintiff's state law claims, a fairness consideration arises with respect to the fact that the statute of limitations for raising these claims in state court has expired. Congress foresaw this precise problem and prescribed a cure when it codified the law of supplemental jurisdiction set forth in 28 U.S.C. § 1367(d). With respect to a district court's supplemental jurisdiction, this section provides as follows:

> The period of limitations for any claim asserted under section (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d). As such, this section ensures that Plaintiff's state law claims will not be considered time-barred so long as he reasserts them in state court within 30 days of the dismissal of this action. Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000); Austin v. Beard, No. 07-CV-1833, 2008 WL 2944871, *9 (M.D. Pa. July 31, 2008). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants Holy Spirit Hospital and John Doe surgeon. Plaintiff shall have the opportunity to pursue those claims in a Pennsylvania court of competent jurisdiction, if he so chooses.

### D. Filing of Amended Complaint

In strict compliance with the foregoing, Plaintiff will be afforded twenty (20) days within which to submit an amended complaint in this action against Defendant Long and the Corrections Defendants. The amended complaint is limited to the claims specified above. In so doing, the amended complaint must be a completely new complaint, filed to the civil action number referenced above. The "amended complaint must be complete in all respects. "It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." Young v. Keohane, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). Failure to file an appropriate amended complaint will result in the dismissal of this action. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAUDIO HERNANDEZ, | : | CIVIL NO. 1:CV-05-1655 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JOHN A. PALAKOVICH, et al., | : | |
| Defendants | : | |

# ORDER

**AND NOW**, this 10th day of November, 2010, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The motion to dismiss filed by Holy Spirit Hospital (Doc. No. 19) is **granted**. All claims set forth against said Defendant are dismissed in their entirety pursuant to Fed. R. Civ. P. 12(b)(6), and Holy Spirit Hospital is dismissed from this action.

2. The claims set forth against Defendant John Doe surgeon are dismissed in their entirety for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii), and John Doe is dismissed from this action.

3. The motions to dismiss filed by Defendant Long (Doc. No. 22) and the Corrections Defendants (Doc. No. 21) pursuant to Fed. R. Civ. P. 12(b)(6) are **granted**. Within twenty (20) days from the date of this order, however, Plaintiff may file an amended complaint with respect to Defendant Long and the Corrections Defendants consistent with the directions in the accompanying Memorandum

4. Failure to comply with this order will result in the dismissal of this action.

S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania