**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLAUDIO HERNANDEZ,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:05-CV-01655** |
| | : | |
| v. | : | **(Judge Kane)** |
| | : | |
| **JOHN A. PALACKOVICH, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

The instant civil rights action was filed by Claudio Hernandez, who was an inmate confined at the State Correctional Institution at Smithfield ("SCI-Smithfield"). In his amended complaint, Plaintiff seeks compensation and equitable relief for injuries stemming from complications during cataract surgery he received on his left eye. (See Doc. No. 105.) Currently before the court are two motions for summary judgment by Dr. Ronald M. Long and George Weaver, the remaining defendants in this case. (Doc. Nos. 204, 208.) For the reasons set forth below, the motions will be denied in part, and the matter will be referred to a magistrate judge for mediation.

**I.     Background**

In early 2004, Plaintiff was sent by SCI-Smithfield officials to J.C. Blair Memorial Hospital due to irritation and burning sensations he had been feeling in his left eye. (Doc. No. 105 at 2.) There, he was advised that he had a cataract in his left eye that would need to be removed. (Id.) On March 22, 2004, Plaintiff underwent cataract removal surgery at Holy Spirit Hospital in Camp Hill, Pennsylvania, which resulted in Plaintiff suffering an injury to his cornea. (Id. at 3, Doc. No. 207-23 at 13.) Plaintiff was prescribed a series of eye drops to aid the healing

process after his surgery, but they were ultimately ineffective and Plaintiff's left eye became infected. (Doc. No. 105 at 3.) When Plaintiff notified SCI-Smithfield officials about the worsening condition of his eye, they did not provide him with medical treatment for one week. Plaintiff's eye infection eventually led to a loss of vision in his left eye. (Id.)

On December 16, 2004, Plaintiff was taken to see Dr. John Schietroma, who recommended the surgical removal of Plaintiff's left eye. (Id. at 4.) Dr. Schietroma suggested that the removal of Plaintiff's left eye would remove the infection and prevent it from spreading to his right eye. (Id.) The surgery was scheduled for January 7, 2005. (Id.)

On December 24, 2004, several nurses at SCI-Smithfield presented Plaintiff with a consent form to sign and told Plaintiff that he would need to sign the form in order to undergo surgery. (Id.; Doc. No. 207-24 at 1.) Plaintiff requested to speak with an attorney before signing the forms because he could not read or understand them, as he does not speak English. (Doc. No. 105 at 4) The nurses informed him that he would not be provided counsel to help him understand the forms, and Plaintiff refused to sign them. (Id.) Because of this, the surgery to remove Plaintiff's eye was never performed. (Id.) Plaintiff has since lost all vision in his left eye, and the vision in his right eye has also begun to deteriorate. (Id. at 5.)

Plaintiff also alleges that he was prescribed a set of protective tinted glasses due to the deteriorating condition of his left eye, and that he did not receive those glasses for over two years. (Id. at 3.) He further alleges that the glasses initially provided to him did not have the necessary protective tint. (Id.)

Plaintiff initially filed this civil rights action against several employees of SCI-Smithfield as well as Holy Spirit Hospital and an unnamed surgeon at that hospital. (See Doc. No. 1.) Holy

Spirit Hospital and the unnamed surgeon were later dismissed and Plaintiff filed an amended complaint against the other defendants. (Doc. Nos. 99, 105.) This court later dismissed Plaintiff's claims against two more defendants, leaving George Weaver, the Health Care Administrator at SCI-Smithfield, and Dr. Ronald Long, a physician at SCI-Smithfield, as the remaining defendants. (Doc. Nos. 201, 202.) Presently before this court are Defendants' respective motions for summary judgment. (Doc. Nos. 204, 208.) For the reasons that follow, the motions will be granted.

**II.     Summary Judgment**

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Melrose, Inc. v. Pittsburgh, 613 F.3d 380, 387 (3d Cir. 2010).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, (1986); see also Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011). Disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." In re Lemington Home for Aged, 659 F.3d 282, 290 (3d Cir. 2011); see also S.H. ex rel. Durrell v. Lower Merion School Dist., 729 F.3d 248, 256 (3d Cir. 2013).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the

record—i.e., depositions, documents, affidavits, stipulations, or other materials— or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s).  Fed.R.Civ.P. 56(c)(1).  The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof for the claim in question.  Conoshenti v. Public Service Elec. & Gas Co, 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 192 n.2 (3d Cir. 2001)).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s).  Fed.R.Civ.P. 56(c)(1).  When determining whether there are any genuine issues of material fact, the court "should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  S.H. v. Lower Merion School Dist., 729 F.3d at 256.

In reviewing a motion for summary judgment, the court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations."  El v. Southeastern Pennsylvania Transp. Authority, 479 F.3d 232 (3d Cir. 2007).

**III.     Analysis**

Both Defendants initially raise the affirmative defense that Plaintiff has failed to exhaust his administrative remedies for his claims. (Doc. No. 205 at 5–6; Doc. No. 210 at 4–9.) Because the failure to exhaust administrative remedies would be a bar to Plaintiff's civil rights claims against Defendants, see 42 U.S.C. § 1997e(a), this court will examine the issue of exhaustion before turning to Defendants' arguments regarding Plaintiff's Eighth Amendment claims.

### A.   Exhaustion of Administrative Remedies

Prisoners who wish to bring a civil action alleging that the conditions of their confinement violate federal law (whether constitutional or otherwise) must first exhaust all available administrative remedies. 42 U.S.C. § 1997e. This requirement is mandatory and not left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S. 731, 734 (2001)). Prisoners must exhaust all available remedies with respect to each claim even when those remedies cannot grant the relief the prisoner seeks. Id. This requirement is not jurisdictional, but instead operates as an affirmative defense that must be pleaded and proved by the defendants. Ray v. Kertes, 285 F.3d 287, 291–95 (3d Cir. 2002). A party can only obtain summary judgment on the ground of an affirmative defense by supporting its motion with evidence "that would entitle [it] to a directed verdict if not controverted at trial." In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). Once the moving party makes this showing, "it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." Id.

The Pennsylvania Department of Corrections maintains a three-step procedure for the resolution of inmate grievances known by its policy number, DC-ADM 804. (Doc. No. 211-1.)[1] This procedure requires that inmates must resolve any issues with the conditions of their confinement by first submitting a grievance for "Initial Review" to the Facility Grievance Coordinator using an official form "within 15 working days after the event upon which the claim is based." (Id. at 4–5.) If the Grievance Coordinator's decision is unfavorable, the inmate may appeal the decision to the Facility Manager within 10 working days. (Id. at 8.) If that appeal is unsuccessful, the inmate may then appeal to the Secretary's Office of Inmate Grievances and Appeals within 15 working days. (Id. at 9.) After this appeal, the inmate has exhausted his available administrative remedies.

Plaintiff concedes that he did not carry out this full procedure with respect to any of the claims in his Amended Complaint. (See Doc. No. 217 at 2–6.) However, Plaintiff contends that these administrative remedies were not "available" to him within the meaning of the statute because he does not speak or comprehend English "with any degree of proficiency" and there were no Spanish translations of the policy available to him. (Doc. No. 214 at 2, 10–15.) In

---

[1] As Plaintiff observes, the version of DC-ADM 804 submitted as "Exhibit A" by Defendant Weaver would not have been the governing policy at the times relevant to the instant case, as it did not go into effect until January 3, 2005. (Doc. No. 211-1 at 1; Doc. No. 214 at 10.) Plaintiff considers this a "fundamental defect" in Defendant's motion because there is "no evidence" in the record of the version of the policy in place in 2004. (Doc. No. 214 at 10.) However, the grievances Plaintiff filed in 2014 were only tangentially related to the claims in his Amended Complaint, and Plaintiff never exhausted his appeals for any of those grievances. (See Doc. No. 206 at 2–3, Doc. No. 217 at 3–6.) This court finds it highly implausible that the procedure could have been so drastically different in 2004 that Plaintiff's actions would have constituted compliance. (See Doc. No. 211-6, Declaration of Tracy Williams at 2 ("Although the DC-ADM 804 has been re-issued over time with different effective dates, it has retained a three-step process for the review of the grievances filed under it.")). At the very least, the procedure would have required inmates to file an initial grievance, and Plaintiff failed to do that for any of the claims raised in his Amended Complaint.

response, Defendants contend that Plaintiff's previous grievances indicate that he possessed some understanding of the grievance procedure, and that his failure to at least request a Spanish copy of the relevant materials indicate that his failure to file a grievance was due to his own unwillingness, not an inability to understand the process. (Doc. No. 218 at 5–9.)[2]

There is no case law in this circuit establishing a clear requirement of how grievance procedures must be published to non-English speaking inmates in order to be considered "available" to them. The Third Circuit has noted (in a non-precedential decision) that "remedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes." Illes v. Deparlos, 447 F. App'x 391, 393 (3d Cir. 2011). That court also upheld a granting of summary judgment for failure to exhaust administrative remedies where the prison made its grievance policy available in Spanish "upon request" and provided an interpreter to those inmates who requested one, even though the plaintiff in that case claimed to not know about its availability. Mendez v. Sullivan, 488 F. App'x 566, 568 (3d Cir. 2012); see also Naranjo v. Brooks, 04-CV-1098, 2009 WL 792335 (E.D. Pa. 2009) (holding that procedure was available to inmate where it was posted in Spanish in inmate housing areas, though plaintiff claimed to not know about the procedures). Thus, the central question is whether SCI-Smithfield made the procedures reasonably available in Spanish, regardless of whether Plaintiff actually obtained a copy of them.

---

[2] Defendants also point to certain portions of Plaintiff's original complaint as evidence that he in fact knew about the procedure and simply chose not to comply with it. (Doc. No. 218 at 2–4.) However, Plaintiff's original complaint was superseded by the amended complaint, and any admissions Plaintiff may have made in that document are no longer binding unless incorporated into the amended complaint. West Run Student Housing Associates, LLC v. Huntington Nat. Bank, 712 F.3d 165, 171–72 (3d Cir. 2013) ("Indeed, effectively disallowing amendment by looking to the original pleading is contrary to the liberal amendment policy embodied in Rule 15.")

Defendants offer no evidence that SCI-Smithfield's grievance policy was made reasonably available in Spanish. Instead, Defendants focus their argument on attempting to show that Plaintiff does in fact understand English sufficiently well to utilize the grievance process, as evidenced by the many grievance forms he filed in English. (Doc. No. 218 at 5–9.) Plaintiff avers that he does not understand English well and that he always used the help of other inmates when he needed to fill out written forms. (Doc. No. 207-25 at 14–14.) This court may not make credibility determinations at this stage and must construe all facts in favor of the non-moving party. According to that standard, the facts in the record support Plaintiff's contention that he had previously used other inmates to file grievances. Thus, for the purposes of determining whether the grievance procedure was available to Plaintiff, this court finds that Plaintiff would not have been able to understand the English language forms.

To the extent Defendants attempt to argue that Plaintiff nonetheless knew how to navigate the grievance process despite his lack of English language proficiency—for example, by using fellow inmates as translators—this argument is insufficient to warrant summary judgment. Although the record indicates that Plaintiff has filed grievances in the past, none of those grievances was ever appealed to the final stage, which is consistent with Plaintiff only having a general awareness of the grievance procedure. (See Doc. No. 188-4; Doc. No. 207-1 at 23.) Furthermore, Plaintiff's mere ability to ask another inmate to file a grievance for him is no substitute for actually having the full grievance policy communicated to him in a language that he understands. In his deposition, Plaintiff explained that he did not file a grievance over not being given a medical release form in Spanish because he thought that was not the sort of issue grievances could resolve. (See Doc. No. 207-25 at 26.) This kind of knowledge of the purpose

8

of the grievance system, and not just the technical procedure of filing and appealing a grievance, is part of what is spelled out in the DC-ADM 804 policy statement.  (See Doc. No. 211-1 at 4 ("The Inmate Grievance System is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate.").)  If this information was not made reasonably available in a language Plaintiff could understand, then the administrative remedy was not available to him.

Finally, Defendants argue that Plaintiff cannot now appeal to the fact that he never received this information in Spanish because he never requested Spanish-language materials. (Doc. No. 218 at 5–9.)  This argument might be decisive if Defendants could show that they had made the relevant materials reasonably available in Spanish at the times relevant to this case. See Mendez, 488 Fed. App'x at 568.  However, Defendants point to no evidence that establishes this, and the evidence in the record is ambiguous on this point.  For example, Lisa Hollibaugh, the Corrections Superintendent's Assistant at SCI-Smithfield, stated that the Spanish version of DC-ADM 804 was not posted in the housing units and that she was not sure if it was available in the library.  (Doc. No. 207-28 at 14.)  She also stated that she was not aware of how inmates were informed that Spanish versions of the inmate handbook and DC-ADM 804 policy were available upon request.  (Id. at 15.)

There are clearly genuine disputes over facts that are material to Defendants' exhaustion defense; namely, the extent of Plaintiff's proficiency with the English language and whether Spanish language versions of the relevant grievance policies were made reasonably available to Plaintiff.  Thus, this court will deny summary judgment to Defendants on this ground.

    **B.**    **Whether Plaintiff Must Prove His Claims With Expert Testimony**

Plaintiff alleges two Eighth Amendment claims: 1) Defendants were liable for failing to ensure that Plaintiff understood the consent form that he was required to sign in order to receive medical treatment, and 2) Defendants were liable for ignoring the ongoing deterioration of Plaintiff's left eye and for not ensuring that he was provided with the protective tinted glasses he was prescribed. (Doc. No. 105 at 5–9.) In order to prove his Eighth Amendment Claims, Plaintiff must show that Defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). Defendant Long argues in part that he should be granted summary judgment because Plaintiff has failed to submit any expert testimony showing that Long's treatment caused Plaintiff harm. (Doc. No. 204 at 7.) Because this argument regarding the necessity of expert testimony would, if successful, be dispositive of Plaintiff's Eighth Amendment claims against both Defendants, this court will address that argument before proceeding further.

Long contends that Plaintiff's Eighth Amendment claims "must fail" absent expert testimony linking Long's medical care "or any alleged delay in care to an actual injury." (Id. at 7.) There is no such bright-line rule in this circuit. Instead, whether expert testimony is necessary in Eighth Amendment cases based on medical injuries is dependent on the factual disputes involved. See, e.g., Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987) ("In some situations in which the seriousness of the injury or illness would be apparent to a lay person, expert testimony would not be required."); Albert v. Yost, 431 F. App'x 76, 80 (3d Cir. 2011) (holding in part that expert testimony was not necessary where the seriousness of plaintiff's medical needs were not in dispute.) Even where the seriousness of a plaintiff's medical needs are in dispute, expert testimony is not necessary where the plaintiff's medical records contain a

10

diagnosis and recommendation for treatment or where the condition "is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted); see also Albert, 431 F. App'x at 80.

Plaintiff's eye condition has been diagnosed by medical professionals as a condition requiring surgical treatment, and it is the sort of condition that a jury could evaluate without the aid of expert testimony. See, e.g., Tormasi v. Hayman, 452 F. App'x 203, 206 (3d Cir. 2011) (Plaintiff's eye condition that caused "dizziness, light-headedness, falling and sustaining physical injury" could "easily be understood by a layperson without the need for an expert."). Furthermore, the acts that Plaintiff alleges constitute deliberate indifference do not require the aid of expert testimony to evaluate. Both Eighth Amendment claims that Plaintiff asserts essentially involve the failure to ensure that Plaintiff received the treatment he was prescribed, and would not require in-depth knowledge of the medical issues involved to evaluate. See id. at 207–08 (holding, in the absence of expert testimony, that a jury could find the defendant acted with deliberate indifference for failing to schedule an optometry appointment).

Because Plaintiff has provided sufficient evidence that a reasonable jury could find that his medical needs were serious without the need for expert testimony, this court cannot grant summary judgment on this ground. Further, the court will refer this case to Magistrate Judge Carlson for settlement pursuant to Local Rule 16.9 and hold the remaining issues raised in Defendants' motion in abeyance pending the outcome of those discussions.

**IV.    Conclusion**

This court finds that there are genuine issues of material fact regarding Defendants' defense that Plaintiff failed to exhaust the available administrative remedies, and will therefore deny Defendants' motion for summary judgment on that with respect to that ground. Furthermore, this court finds that Plaintiff's claims do not require expert witness testimony in order to move forward, and will therefore deny Defendant Long's motion for summary judgment with respect to that ground.  Finally, this court will refer the parties to Magistrate Judge Carlson for the purposes of settlement discussions.

An appropriate order will issue.